308 So.2d 870 (1975)
Lionel ARMSTEAD, Sr., et al., Plaintiffs-Appellees,
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, INC., et al., Defendants-Appellants.
No. 4899.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1975.
*871 Voorhies & Labbe, by D. Mark Bienvenu, Lafayette, for defendant-appellant, Central La. Electric Co.
Aycock, Horne, Caldwell & Coleman, by Jack C. Caldwell, Franklin, for defendant-appellant, South Central Bell.
L. Hallman Woods, New Iberia, for plaintiff-appellee.
Before HOOD, MILLER, and WATSON, JJ.
MILLER, Judge.
Defendants Central Louisiana Electric Company, Inc. and South Central Bell *872 Telephone Company appeal the judgment awarding $32,660.11 to plaintiffs Lionel Armstead, Sr. and his four minor children. They were injured when the car in which they were riding struck a guy line which blocked their path on Louisiana Highway 86. We affirm.
The accident occurred about 8:45 p. m. when they were returning from a family visit. The roadway was clear when they used the same road earlier that evening. The Armstead automobile ran into a 3/8" guy line strung across Highway 86 (the old Loreauville Road) to support the transmission pole on the far side. The transmission pole was sound, but the 30' tall "stub pole" was rotten. The stub pole was guyed to the transmission pole with only one line, but was guyed to an anchor some 7 or 8 feet from the stub pole with two guysone installed by SCBell and one installed by CLECO. Tr. 245, 261. The two guys to the anchor had been disconnected for some time before the rotten pole broke. Tr. 237, 8, 263.
The pole broke that evening during normal weather conditions. The area was dark and the guy line could not be seen. The Armstead automobile struck the cable pulling the stub pole onto their car. Their automobile was a total loss and Mr. Armstead received serious back injuries.
Both the stub pole and transmission pole had been erected by and belonged to SCBell. Their employees did not know the age of the stub pole because it lacked a birthmark or mortality dateindicating that it had been installed before the company started dating its poles. Employees of both SCBell and CLECO testified that neither company had a system for inspecting this type line to locate rotten poles or disconnected guy lines. There is no indication in the record as to when, if ever, this stub pole and the guy lines to the anchor had been inspected. We note again that the stub pole fell and the guy line created this trap during a period of normal weather, and not due to unusual weather conditions.
The trial court properly held the driver to be free from negligence and there was no liability on the part of her insurer, All-state Insurance Company. SCBell was found negligent for 1) having a rotten stub pole, 2) failing to inspect its poles and guy wires, and 3) failing to replace its rotten stub pole. CLECO was found concurrently negligent for failing to inspect the lines and poles.
SCBell contends the trial court erred in 1) holding it responsible for the accident caused by the intervening action of the unknown third party who detached the guy wires from the anchor to the pole, and 2) awarding excessive damages to Lionel Armstead, Sr.
CLECO contends the trial court erred in 1) holding it to be concurrently negligent with SCBell, and 2) not granting indemnity to CLECO against SCBell under its joint use pole agreement.
SCBell was properly held negligent for failing to make reasonable inspections of its poles and lines and in failing to discover and replace the rotten pole and discover and reconnect the disconnected guy lines. These conditions caused the collapse of the pole which in turn allowed the 3/8" guy line to sag across the road. This created an unreasonable risk of harm to passing motorists and caused plaintiffs' injuries.
CLECO was properly held negligent. The "joint use of wood poles" agreement provides that the owner of the poles, in this case SCBell, "... shall, at its own expense, maintain its joint use poles in a safe and serviceable condition, ... and shall replace ... such of said poles as become defective. Except as otherwise provided ... each party shall, at its own expense, at all times maintain all of its attachments ... and keep them in safe condition and in thorough repair...." It provides for a rental of $4 per pole per annum to be paid to the owner for each pole *873 used by the other party. As to liability, the agreement provides that each party shall be liable for injuries caused solely by its negligence or for its failure to comply with specifications of the agreement, but that both shall be liable for one-half the damages caused by their concurrent negligence.
CLECO argues that it was entitled to rely on SCBell to inspect and maintain these poles and that the trial court erred as a matter of law in requiring CLECO to inspect. We do not agree. One cause of this accident was that some unknown third party disconnected the two guy lines from the anchor to the top of the stub pole. Tr. 239, 264, 272. This condition existed for some time and no effort was made to discover it. The three bolts holding each clamp had been detached and the clamps were partially buried at the base of the stub pole. Tr. 218, 221, 237, 8, 249, 263. CLECO installed one guy line from the anchor to the top of the stub pole. Tr. 245, 261. CLECO agreed to maintain all its attachments and keep them in a safe condition and in thorough repair. The disconnected guy lines constituted a cause of this accident. Tr. 239, 264, 272. If CLECO's employees had noticed the disconnected guy line, they would have repaired it. Tr. 253. Their failure 1) to inspect, 2) to discover that their guy line had been disconnected, and 3) to repair this defect was a cause of this accident.
Furthermore, it was established that CLECO did not inspect its own poles which carried loads similar to those on the Loreauville line, and knew that South Central Bell was not inspecting its lines. Under these conditions, an independent duty may have been placed on CLECO to either request that SCBell live up to its agreement, or conduct its own inspections.
There is no manifest error in the trial court's factual determination that CLECO's concurrent negligence was a legal cause of the accident.
CLECO's claim for indemnity under its joint use pole agreement was properly rejected. The agreement provided for CLECO and SCBell to each pay half the damages caused by their concurrent negligence. That provision was properly applied by the trial court.
There is no manifest error in the trial county's award of $6,660.11 in special damages, $25,000 to Mr. Armstead for his injuries together with pain and suffering, and $250 to each of his four children.
It is contended that the $25,000 award was excessive. When Mr. Armstead arrived home after the accident he noticed blood in his urine. The next morning he was stiff all over, with severe pain in his low back and stiffness in both legs. He went to Dr. H. M. Flory who instituted diathermy treatments for some three weeks. When he failed to improve he was sent to Dr. Spencer Walton of New Iberia. Dr. Walton first recommended bed rest and then surgery. A myleogram indicated ruptured discs at the L-4/L-5 and the L-5/S-1 disc interspaces. Mr. Armstead had surgery on January 11, 1973, at which time 1/3 of each of these two discs was removed. He has a permanent disability of ten per cent of the body as a whole. The trial judge determined that Mr. Armstead suffered considerable pain from the accident until his surgery and was still experiencing pain as of the March 5, 1974 trial.
There was no abuse of the trial court's "much discretion" in fixing quantum. LSA-C.C. art. 1934; Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
The trial court judgment is affirmed at appellants' costs.
Affirmed.
*874 WATSON, J., concurs in part and dissents in part, assigning written reasons.
WATSON, Judge (concurring in part and dissenting in part):
As to the liability of South Central Bell Telephone Company and the award of damages to plaintiff, I agree with my esteemed colleagues of the majority; as to casting Central Louisiana Electric Company, Inc. as a joint tort feasor and responsible in solido for damages, I respectfully dissent.
There is no question that South Central Bell Telephone Company was negligent and this negligence caused the accident and consequent injuries to plaintiff and his family. The awards are within the much discretion of the trial court. LSA-C.C. art. 1934.
Both the stub pole and the transmission pole had been erected by and belonged to South Central Bell Telephone Company. The employees of the telephone company did not know the age of the stub pole but said it lacked a birthmark or mortality date, which is a stamp showing the date and place of manufacture. Possibly this was because it was an older pole. The telephone company, according to the testimony, has no system for inspecting and replacing defective poles. The employees of the telephone company did not know when, if ever, this pole had been inspected. As far as the record reflects, poles are replaced when they fall down. This is not a situation where a pole fell because of a storm or strains and stresses of an unusual nature.
I agree with the trial court that the telephone company has a clear duty to make reasonable and proper inspection of its poles and lines in order to discover and repair defects. The telephone company failed to inspect this pole and discover its rotten condition. There is negligence in their failure to make a proper inspection, failure to discover the unsound and unsafe condition of this particular pole and failure to replace it. The collapse of the pole left a cable across the road which created an unreasonable risk of harm to passing motorists and caused plaintiffs' injuries.
However, the agreement between the telephone company and Cleco for the "joint use of wood poles" provides that the owner of such poles, in this case, South Central Bell Telephone Company, "... shall, at its own expense, maintain its joint poles in a safe and serviceable condition, ..." (TR. 162) and replace any that are defective. It provides for rental to be paid by the electric company to the telephone company of $4 per pole per annum for each pole owned by the telephone company and used by the electric company. As to liability, the agreement provides that each party shall be liable for injuries caused solely by its negligence or for its failure to comply with specifications of the agreement but that both shall be liable for one-half each of damages caused by concurrent negligence. Under the terms of this agreement, South Central Bell Telephone Company undertook to maintain the poles involved in this accident. It was paid an annual sum by Cleco for the use of its poles and had an obligation to maintain and repair the poles. I find South Central Bell Telephone Company solely responsible for inspection, maintenance and replacement of these defective poles under the terms of its agreement with Cleco. There was no duty on the part of Cleco to inspect and maintain these poles. Cleco was entitled to rely on South Central Bell to carry out its obligations. In my opinion the trial court erred as a matter of law in finding Cleco had a duty to inspect, that Cleco breached the duty and was concurrently negligent.
Therefore, I respectfully concur in part and dissent in part.