303 So.2d 840 (1974)
Albert FREEMAN
v.
Carol WILCOX et al.
No. 9966.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
Writ Refused February 7, 1975.
*841 Bryant W. Conway, Baker, for appellant.
Eugene W. Groves, Baton Rouge, for appellees.
Before LOTTINGER and COVINGTON, JJ., and BAILES, J. Pro Tem.
BAILES, Judge Pro Tem.
Plaintiff brought suit individually and as administrator of the estate of his minor son, Paul Freeman, to recover his medical expenses, and for the injuries sustained by his son when he fell from the rear of a pickup truck owned and operated by the defendant, Carol Wilcox, and insured by Travelers Indemnity Company. The trial court dismissed the plaintiff's demands, holding Carol Wilcox was not negligent, and that even if he were, Paul Freeman was guilty of contributory negligence, barring the plaintiff's recovery. Plaintiff appealed. We reverse and award damages.
This accident occurred on Liberty Drive in East Baton Rouge Parish, on the evening of April 4, 1973. Liberty Drive is a dead-end street and runs in a southerly direction from its intersection with Blount Road. The surface of this road is generally bumpy, and apparently has numerous holes in its poorly blacktopped surface. The plaintiff and his family live on the east side of Liberty Drive a short distance from Blount Road. The defendant, Carol Wilcox, maintained thirteen head of livestock in a pasture fronting on the east side of Liberty Drive, approximately two blocks south of the Freeman residence.
On the evening of this accident, at about the hour of 7:30 p. m., Carol Wilcox stopped at the Freeman residence and invited Paul Freeman, age twelve, and his brothers, Carey Freeman, age nine, and Albert Darnell Freeman, age fourteen, to accompany him to this pasture and assist him in feeding his livestock. The Freeman boys, as they had on four or five previous occasions, rode in the bed of Wilcox's pickup truck to the pasture. Mr. Wilcox drove to the pasture, and the Freeman boys assisted him in feeding his animals. When this was completed he drove from the pasture and proceeded in a southerly direction down Liberty Drive a short distance to his mother's house, turned into her driveway, stopped his truck, and went inside the residence for a short visit with his mother. On his return, Carol Wilcox asked the Freeman boys if they were ready to return to their home. They replied that they were. At this time the Freeman boys were seated on the sides of the bed of the pickup truck. As Carol Wilcox proceeded to back from the driveway into Liberty Drive, young Paul and Carey Freeman assumed sitting positions on the tailgate of the truck, facing to the rear with their feet on the rear bumper. Paul, Carey and Albert Freeman testified that Carol Wilcox must have seen Carey and Paul assume their sitting position on the tailgate because Wilcox was looking through the rear window of the vehicle while he was backing from the driveway. Defendant driver then proceeded in a northerly direction on Liberty Drive at a "fast" rate of speed. He hit a hole or bump in the road that caused the rear of the truck to bounce in the air, and as a result Paul was thrown to the road surface of Liberty Drive and sustained *842 personal injuries. At the trial of the case, defendant Wilcox denied any knowledge of the occurrence of the accident. He denied that he stopped at the residence of Albert Freeman on the date of the accident and invited Paul, Carey and Albert Darnell Freeman to assist him in feeding his livestock, all contrary to the testimony of the three minor boys and their mother, Mrs. Lillian Freeman.
The accident was witnessed by Martha Ann Vessell, age sixteen, and her sister, Pleasant Jane Vessell, age fourteen, who live on Liberty Drive. These girls were walking along the edge of Liberty Drive at the time of the accident. The Wilcox's vehicle passed them prior to the accident, and they described its speed as "fast" and saw the Wilcox vehicle strike a bump or chuckhole in the road surface, and saw Paul Freeman as he was thrown from the rear of the truck. For the reasons hereinafter stated, we reverse the judgment of the lower court and render judgment in favor of the plaintiff individually and as the administrator of his minor son.
After reviewing all of the evidence, we conclude that Wilcox was negligent in driving his truck at a rate of speed which must be considered excessive in light of his knowledge that young Paul Freeman was seated on the rear of the tailgate of his truck. Where a person undertakes the control and supervision of a child, he has the duty to use reasonable care to protect the child from injury. Although such person is not an insurer of the safety of the child, he is required to use reasonable care commensurate with the reasonable foreseeable risk of harm to which the child might be subjected while under his control and supervision. Williams v. Allstate Insurance Company, La.App., 268 So.2d 290 (1972).
In situations where children are injured the known characteristics and instincts of children must be considered in determining whether a person has exercised reasonable care. Herein Wilcox owed to young Paul Freeman the duty to exercise a greater degree of vigilance and care than to an adult. Williams v. Allstate Insurance Company, supra.
In the instant case the trial judge found as a matter of fact that the accident and events surrounding the accident occurred as testified to by Paul Freeman and his two brothers.
Applying the above quoted principles to the facts, we find that Carol Wilcox was negligent in not taking the necessary precautions to insure that young Paul Freeman and his brothers were safely seated in the rear of his pickup truck before returning to the Freeman residence. Although Wilcox denied the presence of the Freeman children in his truck, the trial court found that the boys were in fact in his truck. We hold that Carol Wilcox's failure to take the appropriate action to make sure that they were seated in a position of safety was the sole proximate cause of Paul Freeman's accident. Had Wilcox done so, he would have seen the position of young Paul Freeman and certainly would not have started his journey to the Freeman residence with Paul Freeman seated on the tailgate of his truck. He owed Paul Freeman the duty of using due care commensurate with his insecure position on the tailgate of the pickup truck. As such, he was required to drive his truck in a manner consistent with any foreseeable dangers to Paul Freeman. He should not have driven at such a "fast" rate of speed on Liberty Drive.
We do not find that Paul Freeman was guilty of contributory negligence in assuming the riding position he did on the rear tailgate of the vehicle. The contributory negligence of a twelve year old boy is not to be measured by the standard of care expected of an adult, but only by the self-care expected of a child of his age, intelligence and experience under the particular circumstances presented to him.
The general rule in regard to contributory negligence of children is discussed at *843 length in the case of Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (1958), where it is stated as follows:
"The general rule in regard to the contributory negligence of children is stated in 38 American Jurisprudence, Verbo Negligence, para. 204, page 884 thus:
`Generally speaking, children are required to exercise ordinary care to avoid injuries to themselves. The fact that a child does not have as mature judgment as an adult does not excuse it for not exercising the judgment and discretion which it does have, or for heedlessly rushing into known dangers. * * * In determining whether a child has been negligent in a matter involving its own safety, it is not held responsible for the exercise of more care than reasonably can be expected of a child of its maturity and capacity. There is a distinction between adults and children in respect of the attention given to the personal equation in determining contributory negligence. The rule for determining whether an adult exercised due care for his own safety sets up as a standard the care ordinarily exercised by persons of intelligence and discretion. As to the child plaintiff, however, the caution required is determined according to the maturity and capacity of the plaintiff under the particular circumstances of the case.' (Italics ours.)"

Further therein the court commented:
"[3,4] In the present case it must be determined if Rhett was contributorily negligent in riding his horse over the bridge herein. The mere fact that Rhett had been warned by his parents not to ride across the bridge but to lead the horse is only one circumstance and the test whether Rhett appreciated the danger of these warnings and in reckless disregard chose not to heed them. Cook v. Louisiana Public Utilities Co., La.App., 19 So.2d 297; Ledet v. Lockport Light & Power Company, 15 La. App. 426, 132 So. 272. In order to constitute contributory negligence Rhett must have done something that exposed him to danger and he must have acted knowingly and heedlessly with reckless disregard for the consequences."
The above cited Cook case and Ledet case are particularly significant to this issue.
Paul Freeman moved from his sitting position on the side of the bed of the Wilcox truck to the tailgate as Wilcox was in the process of backing his pickup onto Liberty Drive. There was a short distance for Carol Wilcox to drive from his mother's house to the Freeman residence. We are not prepared to hold as a matter of law, under the facts of this case, that a twelve year old boy should have anticipated that his host driver would drive at such a fast rate of speed and strike a bump with such force that he would be thrown from the rear bumper of the vehicle.
The record does not establish that young Paul Freeman knowingly and heedlessly, with reckless disregard of the consequences, exposed himself to danger in sitting on the tailgate of the Wilcox vehicle. Contributory negligence is an affirmative defense, and the defendant bears the burden of proving every element necessary to establish this affirmative defense. From the facts in this case, we conclude that Paul Freeman was not guilty of contributory negligence.
As a result of the fall, Paul Freeman sustained a laceration and contusion of the right upper eyelid, laceration of the right lip, laceration of the right nostril, contusions and abrasions of the left hand and upper right knee. His right and left central and upper right lateral teeth were fractured and surgically removed during his two-day period of hospitalization for the injuries sustained in this accident. The trial judge commented at the trial of this case that Paul Freeman had "three noticeable *844 scars, one below his right nostril, which ran from the nostril to his lips, approximately three-quarters to one inch in length. There was a small scar about one-half inch in length to the right of his right nostril, and there was a scar extending from the right eyelid down below the right eye, approximately one inch and a half long." The trial judge described the scars as "disfiguring but not unsightly." Dr. Joseph Patin, a general surgeon, treated Paul Freeman at Our Lady of the Lake Hospital on the night of this accident and continued the treatment until the wounds healed and he was discharged. The physician recommended that the scars be reevaluated in five years to determine whether a revision of them would be necessary. He classified Paul Freeman's scars as keloid type which could not be eliminated by plastic surgery. Dr. Patin's bill was $205.00.
Dr. Ragusa's bill of $110.00 for surgical removal of the three fractured teeth and attendant treatment is approved.
Dr. John F. Day, a dentist who examined the injured youth, testified that Paul at this time needs a removable bridge of his teeth which would cost $165.00, and because of the development of his mouth in about two years he would need another removable bridge at a cost of $175.00, and then at age 18 he would need a fixed bridge at a cost of $750.00. The total present and future dental charges would be $1090.00.
Considering the permanent disfiguring scars on the face of this child, the reasonable expectation of an increase of disfigurement because of the keloid condition of the skin tissues, the loss of three permanent teeth, and the physical pain and suffering attendant to the lacerations, contusions and abrasion and extraction of the teeth, we find an award of $9000.00 would be fair and adequate. The following special damages are awarded: Present and future dental expenses, $1200.00 and physician's bill, $205.00. No proof of hospital charges or other medical expenses was offered.
For the foregoing reasons, the judgment of the lower court is reversed and there is judgment herein against the defendants, Carol Wilcox and Travelers Indemnity Company, in solido, in favor of Albert Freeman individually in the amount of $1405.00 and in favor of Albert Freeman, in his capacity as administrator of the estate of his minor son, Paul Freeman, in the amount of $9000.00; together with legal interest from date of judicial demand until paid.
The defendant-appellees are cast will all court costs.
Reversed and rendered.