318 So.2d 74 (1975)
Wendelaus KELLY, Jr., Individually and as Administrator of the Estate of his minor son, Wendelaus Kelly, III
v.
Louis B. MESSINA, Jr., et al.
No. 6889.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1975.
Rehearing Denied September 9, 1975.
*75 Lambert J. Hassinger, New Orleans, for plaintiff-appellant.
Porteous, Toledano, Hainkel & Johnson, Christopher E. Lawler and James L. Donovan, New Orleans, for defendants-appellees.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a dismissal of his suit for damages arising out of an accident which occurred when his almost eleven year old son on a bicycle was struck by an automobile driven by defendant Louis B. Messina, Jr., owned by his father, also a defendant, and insured for liability by defendant Allstate Insurance Company. At the time of the accident Messina, Jr., was 17 years of age and resided with his father.
Generally, the facts are not in dispute. Kelly had been riding his bike accompanied by three other youngsters on Wisner Boulevard in a northerly direction, in the City of New Orleans. They had traversed an overpass over Florida Avenue, proceeding in single file in the left-hand lane until they came to a point where Wisner had leveled off on the north side of the overpass. Winser Boulevard consisted of two lanes of traffic for each direction separated by a neutral ground area. The linear distance between the crest of the overpass and the point at which the overpass came to grade on the north side was 870 feet.
After the boys had made their descent in single file with Kelly fourth in line at least two of the boys got up onto the neutral ground with the third intending to follow *76 them. At this point Kelly turned his bicycle into the right lane where he was struck by the Messina automobile. Messina applied his brakes but struck the rear of Kelly's bike, whereupon Kelly was thrown into the air on top of the hood or roof of Messina's automobile.
The principal factual issues for a resolution at the trial were the speed at which Messina had descended from the overpass and was traveling when he realized Kelly was entering his lane of traffic and Messina's distance from Kelly when he changed lanes.
The trial judge, in reasons for judgment, after objectively summarizing the testimony of all of the witnesses concluded "that the plaintiff was contributorily negligent in the operation of his bicycle in that he failed to maintain a proper lookout, and he improperly changed lanes at such a time when it was not reasonable to do so, and, therefore it was his negligence which caused the accident, . . . ."
Plaintiff's case on speed rests on the testimony of an accident reconstruction expert, plaintiff himself and an investigating officer. The expert testified that the production of skid marks of 100 to 110 feet would indicate that defendant had been traveling in excess of 49 miles per hour, and that an automobile traveling at 35 miles per hour would have left 54 feet of skid marks. Plaintiff, the father of the injured boy and a policeman, testified that he came to the scene shortly after the accident and saw skid marks which he visually estimated to be 100 feet long. An investigating officer came to the scene sometime after the accident at the request of a first officer who was sent to make the official investigation because the first officer did not have a measuring tape. This officer who made the measurements passed them on to the first officer and testified that he recalled that the right skid mark was 107 feet while the left was 120 feet. He made no notes and despite the facts that this measurement was made three years prior to the trial, and that he had made numerous other measurements in the meantime which he could not recall, he was able to recall these specific measurements at the time of the trial. This police officer had known plaintiff as a police officer for ten years.
Young Kelly testified on this question of Messina's speed that prior to his changing lanes he looked over his shoulder and saw Messina approaching but at such a distance that there was no danger involved in his changing lanes had Messina not been traveling at an excessive rate of speed.
In opposition to this testimony, defendant testified that he had been going 30 to 35 miles per hour, one of defendant's passengers, Raymond Pecora, testified that they had been proceeding at 35 miles per hour, and another witness, Frank Prieto, who had been in the left lane of traffic on top of the overpass, going 30 miles per hour, said that defendant passed him traveling at 35 to 37 miles per hour.
The contradiction between the testimony of plaintiff, the policeman and the accident reconstruction expert on the one hand, and that of defendant and his two witnesses, on the other hand, presented a conflict as to whether defendant was proceeding at what might be deemed a highly excessive rate of speed of 50 miles per hour or a speed of 30 to 37 miles per hour. On considering the trial court's reasons for judgment, we find no indication as to how this conflict in the testimony was resolved. The trial judge only summarized the testimony of each witness who testified and concluded that the boy was contributorily negligent without a finding as to the negligence of the driver or any call as to the credibility of the witnesses. Therefore, our task in examining this record is not simply to determine whether there is manifest error in the trial judge's findings. Nor do we have the advantage of any credibility calls which he could have made.
*77 Defendant testified that he saw the skid marks but did not notice their length so that plaintiff's evidence on this point was uncontradicted. If we accept that evidence the conclusion necessarily follows that defendant was traveling far in excess of the speed limit. But even accepting the testimony from the best possible point of view of defendant, it seems clear that he was driving at an excessive rate under the circumstances prevailing prior to the collision.
According to defendant and his witnesses he was driving between 30 and 37 miles per hour as he approached plaintiff, so that he was going at or near the stated speed limit despite the fact that he saw the boy in the left lane of the road ahead of him for the entire 870 feet of his descent from the top of the overpass.
When defendant observed the presence of plaintiff he was placed under the highest duty of care and should have anticipated that plaintiff was possessed of limited judgment and his action was likely to be sudden and unpredictable. Ates v. State Farm Mutual Automobile Ins. Co., 191 So.2d 332 (La.App. 3rd Cir. 1966).
Applying this principle to the facts of the instant case, we know the maximum legal rate of speed defendant could have proceeded under any circumstances was 35 miles per hour, so it necessarily follows that he should have reduced his speed to some extent below that speed limit in order to meet the standard of care imposed upon him. Thus, his negligence clearly consisted in his driving at an excessive rate of speed under the circumstances.
But the question remains as to whether the negligence of the defendant was the proximate cause of the accident or, stated conversely, whether the accident would have occurred even had defendant exercised the proper degree of care in reducing his speed to some reasonable extent under the circumstances. His own testimony was that he had the boy under continuous observation from the time he was at the crest of the overpass but that the boy suddenly cut in front of him when he was but 10 to 15 feet away. Had this occurred, he could not have avoided the accident regardless of his speed. But Pecora testified that the boy cut in front of Messina when he was 40 feet away and Prieto, when Messina was 50 feet away from the boy. Then there is the mute uncontradicted evidence of skid marks of over 100 feet. Surely this evidence preponderates to the effect that defendant was well over 15 feet away from Kelly when he realized that the boy was putting himself in danger. Plaintiff's expert testified that at 35 miles per hour a driver requires some 92 feet in which to bring his vehicle to a stop. If plaintiff's witness's testimony of 100 feet of skid marks is accepted it would follow that defendant could have avoided the accident had he been traveling at some speed under 35 miles per hour.
Under the circumstances of this case, it was incumbent upon defendant to show by some evidence that even if he had reduced his speed to 20 or 25 miles per hour he still could not have stopped his automobile in time, and we find no evidence to support such a conclusion. The circumstances indicate otherwise.
In Tate v. Hill, 197 So.2d 107 (La.App.3rd Cir. 1967) the Court applied the principle which places a high degree of care on a motorist when children are observed on or near a road. Several cases in which injured children were of sufficient ages to be held contributorily negligent were analyzed by the Court, but the Court noted that in all of these cases the childrens' conduct and acts of negligence were held not to be contributing causes. In each case "the doctrine of last clear chance was applied and the defendants in each were held to have had sufficient time to avoid the accidents notwithstanding continuing negligence on the part of the youths involved."
*78 The high degree of care imposed upon the motorist who sees the presence of young children on the road as did defendant in the instant case imposes upon him the duty to anticipate that the child will be negligent, and a finding that he was negligent does not necessarily lead to a conclusion that the child was guilty of such contributory negligence as would defeat his recovery. See Ales v. State Farm Automobile Insurance Association, supra. In order for a child's negligence to constitute such contributory negligence he must have acted knowingly and heedlessly with reckless disregard for the consequences. Freeman v. Wilcox, 303 So.2d 840 (La.App. 1st Cir. 1974).
As in the Tate case, we are not called upon here to reverse the judgment of the trial court on a question of fact but we find that the district judge committed an error of law in his failure to decide the case on the basis of the principles we have discovered. His dismissal of plaintiff's suit on the basis of the boy's negligence was an over simplification of the law, which in this case permits recovery despite the boy's negligence.
Young Kelly suffered multiple bruises and lacerations of the scalp, head, mouth, chin and knees. Plaintiff incurred $463.63 in medical expenses for an initial hospitalization for 24 hours after the accident and active treatment by a physician until January, 1973. Complications developed in the boy's left knee which became infected as a result of particles of shell being imbedded in the knee. The physician who last saw the boy just before trial explained that the skin, now scar tissue, on the boy's knee was "paper thin" so that it was susceptible to splitting open and readily becoming infected. The doctor opined that the condition was permanent and would cause a restriction in the boy's activities because of his vulnerability to reinjury of the knee. Plaintiff stipulated that he was seeking a maximum recovery of $10,000, the limit of the policy insuring defendant. We have concluded that an award in that amount would do substantial justice in this case.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of plaintiff, Wendelaus Kelly, Jr., and against defendants, Louis B. Messina, Jr., Louis B. Messina, Sr. and Allstate Insurance Company, jointly and in solido in the sum of $10,000 with legal interest from date of judicial demand until paid, and all costs of these proceedings.
Reversed and rendered.
PER CURIAM.
In their application for rehearing appellees have cited a portion of our opinion as indicative that we erred in requiring them to bear the burden of proof on a theory of last clear chance.
In order to clarify our opinion we intended to find, and now amplify those findings to the effect that had Messina been traveling at a speed which was reasonable under circumstances, i.e., with young children on bicycles in and near the roadway ahead, Messina could have avoided striking young Kelly. We did not mean that appellees had the initial burden of proof on this issue, but once plaintiff established his case by a preponderance of the evidence it did become appellees' burden to defend themselves. One defense was that even had Messina been traveling at a reasonable rate of speed he could not have avoided the accident. We said and we reiterate that the circumstances as a whole reveal otherwise.
The application for rehearing is denied.