345 So.2d 136 (1977)
Patricia LaCROIX, as natural tutrix of the minor, Michelle Watts
v.
MIDDLE SOUTH SERVICES, INC., et al.
No. 11188.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
Rehearing Denied May 9, 1977.
Writ Refused June 15, 1977.
*137 Wilson M. Montero, Jr., New Orleans, Mike J. Balen, Covington, for plaintiff appellant.
Robert J. Young, Jr., New Orleans, for defendant appellee.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
LOTTINGER, Judge.
This is a suit by Patricia LaCroix, as natural tutrix of the minor, Michelle Watts against Middle South Services, Inc., Louisiana Power & Light Company, and Harold L. Quave, as defendants. The Trial Court rendered judgment in favor of defendants, dismissing plaintiff's suit. Plaintiff has taken this appeal.
This suit results from an automobile-bicycle accident. The plaintiff is the mother and natural tutrix of the minor child, Michelle Watts, who on June 28, 1972, at approximately 5:15 P.M., was struck by an automobile driven by defendant, Harold L. Quave. The petition alleges that defendant Quave was employed at the time by Louisiana Power & Light Company and/or Middle South Services, Inc. and was within the scope of his employment, thus claiming liability on the part of the two companies.[1]
The evidence reflects that the minor was thirteen years of age at the time of the accident and was riding her bicycle on the shoulder of Louisiana Highway 21 near Covington, Louisiana. The defendant, whom the evidence reflects was employed by Louisiana Power & Light Co. at the time, was operating a company car going in the same direction as the minor. He noticed the minor on the bicycle some distance ahead of him and testified that, as another vehicle was approaching him and he realized that the two cars would meet at approximately the same spot where the bicycle was being ridden on the shoulder, he took his foot off of the accelerator and allowed his car to coast. After the approaching car passed, he turned towards the center of the highway so that his left tire "was just over the center line" when there was an impact on the right side or the right front of the car. He said it happened very rapidly and could not explain what caused the car and the bicycle to meet. He said that after the impact the bicycle was on the hood of his car. He saw Michelle go beside the car on the right side of the car. He immediately swerved to his left as a reaction to keep the car away from her. He stated that as soon as he could see in the rearview mirror she was clear, he veered back to the right. The bicycle came off the car and went under the car at this point, and he dragged it off to the shoulder of the road.
Michelle testified that she left her home to go to the house of a friend across the highway and just a couple houses down the road. She crossed the highway, proceeded to her right shoulder, noticed the friends *138 were not at home and was intending to go to the next house to turn around to return home. The next thing she remembers is waking up in the middle of the road. She knew nothing whatsoever about the accident nor the cause thereof.
Considering the high level of care that is required of motorists as they approach young children alongside the highways, we feel that the defendant was negligent in the manner in which he was operating his automobile.
The evidence reflects that upon first noticing Michelle, the defendant was traveling at a speed of 55 miles an hour. He took his foot off the accelerator to allow the oncoming automobile to pass before meeting Michelle, and he testified that at the time of the impact, his vehicle was proceeding at approximately 45 miles per hour. There is not one bit of evidence in the record that defendant blew his horn nor took any other evasive action except to release his foot from the accelerator and pull his left wheels just over the center line of the highway. Neither is the width of the highway in evidence, though it was only two lanes. At the time of the accident, there were no other cars coming from either direction, and we feel that defendant should have reduced his speed more, pulled further to the left and blown his horn. There is also nothing in the record to show what caused the bicycle to come onto the highway and strike the car.
The jurisprudence of this state places a high degree of care upon a motorist who sees the presence of young children near the road as did defendant in the instant case and imposes upon him the duty to anticipate that the child might act suddenly, unpredictably and often foolish and a finding that the child was negligent does not necessarily lead to a conclusion that the child was guilty of such contributory negligence as would defeat his recovery. Kelly v. Messina, 318 So.2d 74 (La.App. 4th Cir. 1975); Price v. Watts, 215 So.2d 187 (La. App. 3rd Cir. 1968; Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332 (La.App. 3rd Cir. 1966); and Bosarge v. Spiess & Co., 145 So. 21 (La.App. Orl.Cir. 1932).
In order for a child's negligence to constitute such contributory negligence, he must have acted knowingly and heedlessly with reckless disregard for the consequences. Freeman v. Wilcox, 303 So.2d 840 (La.App. 1st Cir. 1974), writ refused 307 So.2d 630 (La.1975) and Kelly v. Messina, supra. There is no evidence in the record which would lead this Court to the conclusion that the minor was negligent.
Under the jurisprudence of this state we are compelled to disagree with the Trial Court which held:
"Under the circumstances, the Court can find no negligence on the part of Mr. Quave in attempting to pass the bike as he did. He observed it for a great distance, saw that it was on the shoulder of the road, and had no reason to believe that he could not pass safely by pulling his vehicle near the center of the roadway."

QUANTUM
Immediately after the accident Michelle Watts was transported by ambulance to St. Tammany Parish General Hospital where she was seen in the emergency room by Doctor Jacob H. Kety. At this time his findings were a cerebral concussion laceration of the scalp about 4 inches long, a 3 inch long laceration of the right leg, multiple abrasions and contusions. The lacerations were sutured and the abrasions and contusions were cleansed and dressed. She was admitted to the hospital for observation. On June 30, 1972, she was discharged. Dr. Kety saw her an additional 19 visits after her discharge from the hospital. She had developed a hematoma as well as a thrombophlebitis condition on her left leg, which was painful. She was placed on medication for this condition as well as administered ultrasonic and whirlpool treatments.
Additional medical evidence in the record relates that plastic surgery was recommended. On examination and in his report *139 Dr. William J. Pollock states that on the right lower leg there was a 4 × 1.5 cm full thickness scar, roughly triangular in shape with depression of the area secondary to loss of subcutaneous fat. On the inner aspect of the left upper leg just below the knee, there was a 4 × 1.5 cm depressed more superficially scarred area. Apparently her left leg just below the knee was severely bruised, and a blood clot formed. The skin overlaying the subcutaneous clot ultimately ulcerated and the clotted material was drained out and subsequently healed. Dr. Pollock cautioned that scars can never be completely removed, and revision of the scars simply means the production of scars of better aesthetic qualities than the ones she now possesses. He expected with surgery she would be in the hospital two days and then two weeks in bed at home.
Neurological examinations proved negative. She was cautioned by one of her doctors that birth control pills currently available may exacerbate her preexisting phlebitis condition.
After reviewing all of the medical evidence available to this Court and considering that this young lady was 13 years of age at the time of the accident, 17 years old at the time of trial, under much pain for some time, and the emotional stress caused by the scars, we are convinced that the amount of $15,000.00 for general damages, and $2,300.00 for property damage including future medical is justified.
Drs. Jacob H. Kety and Robert L. Applebaum testified by deposition and expert witness fees in the amounts of $75.00 each is awarded and taxed as costs.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is reversed, and IT IS ORDERED, ADJUDGED and DECREED that there be judgment in favor of plaintiff, and against the defendants, Louisiana Power & Light Company and Harold L. Quave in solido as follows: In favor of Patricia LaCroix, individually, for Two Thousand Three Hundred Dollars ($2,300.00), and in favor of Patricia LaCroix, as natural tutrix of the minor, Michelle Watts, for Fifteen Thousand Dollars ($15,000.00), with legal interest on both amounts from the date of judicial demand until paid; expert witness fees of Drs. Jacob H. Kety and Robert L. Applebaum be fixed at Seventy-Five Dollars ($75.00) each and taxed as costs; and that defendants-appellees pay all costs of these proceedings.
REVERSED AND RENDERED.
NOTES
[1] Subsequent to the filing of the petition, plaintiff voluntarily dismissed without prejudice the suit against Middle South Services, Inc.