381 So.2d 937 (1980)
Marvin Kent WIDCAMP, Individually, etc., Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellees.
No. 7501.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
*938 Nathan A. Cormie and Harold L. Thibodeaux, Lake Charles, for plaintiff-appellant.
Stockwell & Sievert, Viccellio Clements & Shaddock, John S. Bradford, Raggio, Cappel, Chozen and Berniard, Richard B. Cappel, of counsel, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET and SWIFT, JJ.
FORET, Judge.
This is a tort suit that arises out of an accident which occurred at approximately 12:20 P.M. on July 19, 1977. The accident occurred at the intersection of U.S. Highway 90, also known as the Old Spanish Trail, and Hoffpauir Lane, in Calcasieu Parish, Louisiana, when a vehicle driven by Donald J. Ellender struck Daniel Widcamp, age 8, while the Widcamp boy was crossing U.S. 90.
Daniel Widcamp's father, Marvin Kent Widcamp, brought this suit on his own behalf and on behalf of his minor son against Ellender, his insurer, State Farm Mutual Automobile Insurance Company, and his own underinsured motorist carrier, Allstate Insurance Company. The case was tried to a jury which found that the defendant, Ellender, was guilty of negligence in the operation of the vehicle he was driving at the time of the accident. The jury also concluded that Daniel Widcamp was guilty of contributory negligence or assumed the risk, and accordingly, denied recovery. Further, the jury answered the portion of the special interrogatories on damages and awarded the sum of $1,786.68 in medical expenses, and the sum of $2,000.00 for personal injuries to Daniel Widcamp. Judge Hood informed the jury that its answers were inconsistent and told them that it would be necessary for them to review the verdict sheet and either answer question 2 "No", or delete the damages which they awarded. The jury chose to delete the damages they awarded.
Plaintiff now prosecutes this appeal, assigning as error the failure of the jury to properly apply the law to the facts, as they were instructed by the trial judge, and in finding Daniel Widcamp to be contributorily negligent, or having assumed the risk.
The issues presented are:
(1) Negligence of Ellender; and
(2) Was Daniel Widcamp guilty of contributory negligence.

NEGLIGENCE OF ELLENDER
At the time of the accident, Daniel Widcamp, Laura Lee Hoffpauir, and Becky Richard were on their way to a nearby store to buy candy. Becky Richard and Laura Lee Hoffpauir crossed the highway first. (The record does not reveal why Daniel Widcamp did not cross the highway with the girls.) Daniel Widcamp then started to cross the highway. As he reached a point approximately three to four feet from the northern edge, he noticed the oncoming Ellender vehicle. The boy made no effort to *939 run or move, but instead froze there in the center of the lane in which Ellender was traveling. Ellender applied his brakes, which caused his vehicle to skid some seventy-two feet. The Ellender vehicle struck the boy before it came to a complete stop.
The evidence shows that Ellender was traveling approximately 50 miles per hour, in a westerly direction, when he first noticed the Widcamp boy. He then took his foot off the accelerator and began to apply the brakes. Ellender was approximately one hundred twenty to one hundred fifty feet from the boy when he first saw him. Ellender was given a traffic citation for exceeding the posted speed limit, 25 miles per hour, and subsequently plead guilty to that violation. According to Trooper Clayton J. Fontenot, Ellender was traveling 45 miles per hour at the time he applied his brakes and his vehicle began to skid. Ellender testified that he did not sound his horn immediately prior to the accident.
Daniel Widcamp remembers nothing about the accident except that he was going to the store to buy candy. The next thing he remembers is that he awoke in a hospital bed. (Tr. rec. pg. 614).
As a result of the accident, Daniel Widcamp suffered multiple bruises, abrasions, minor cuts, and a concussion described as somewhat similar to the type a boxer or football player may receive.
It has uniformly been held by the courts of this State that a motorist who sees or should see children near the roadside must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. LaCroix v. Middle South Services, Inc., 345 So.2d 136 (La.App. 1 Cir. 1977), writ refused, 346 So.2d 716 (La.1977); Kelly v. Messina, 318 So.2d 74 (La.App. 4 Cir. 1975); Sutton v. Rogers, 222 So.2d 504 (La.App. 2 Cir. 1969); Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332 (La.App. 3 Cir. 1966); Dufrene v. Dixie Auto Insurance Co., 373 So.2d 162 (La.1979).
Ellender, by his own admission, was exceeding the posted speed limit at the time of the accident. He also testified that there was sufficient time for him to stop or to slow down to allow Daniel Widcamp to cross the street. (Tr., pgs. 992 and 993). We quote from his testimony starting at page 992:
"Q. Did you see two little girls that had walked across the street just before the little boy?
A. Yes, sir, I could see the little girls.
Q. That is, you could see them standing on the other side of the road, couldn't you?
A. Yes, sir.
Q. Were they looking back at the little boy?
A. They appeared to be.
Q. Now, at that 150 feet there where you saw the little boy three feet from the pavement and the little girls across looking back at him, could you have stopped you car within the speed limit of 25 miles an hour at that time?
A. Was there any reason for me not to stop?
Q. That's correct. Could you have stopped it then?
A. I didn't think they were running out, no, sir.
Q. I'm asking you, though, could you have stopped it then, the car, before getting to the little boy?
A. When I saw them, when I first saw them?
Q. Yes, sir.
A. I could have stopped.
Q. All right. Did you have adequate distance to have reduced
A. Yes, sir.
Q. your speed where you could have let the little boy pass had you wanted to slow or stop?
A. Yes, sir.
Q. Did Danny appear to be looking across the street at the little girls as he was standing there at the edge of the pavement?
*940 A. Yes, sir.
Q. Did you sound your horn at this little boy or these children to warn them of your approach?
A. No, sir, I didn't have time.
Q. You didn't have time when you saw them there looking back at him when you were 150 feet back?
A. I didn't think he was going to run out in the road.
Q. No, I didn't ask you that, sir. I asked you: Did you sound your horn to warn the children of your approach with them situated
A. No sir. They were just standing there, so I figured they knew I was coming."
Nevertheless, he failed to bring his car under such control that would enable him to avoid the accident, as was his duty, regardless of any unexpected or expected action on the part of the child. Guillory v. State Farm Mutual Automobile Insurance Co., 300 So.2d 595 (La.App. 3 Cir. 1974), writ refused, 304 So.2d 669 (La.1974). We therefore conclude, as did the jury, that Ellender was negligent.

CONTRIBUTORY NEGLIGENCE OF DANIEL WIDCAMP
The jury found, in its answer to written interrogatories, that Daniel Widcamp was contributorily negligent, and consequently plaintiff was ultimately denied recovery. The law concerning the contributory negligence of a pedestrian has been clearly delineated in Baumgartner v. State Farm Mutual Automobile Insurance Co., 356 So.2d 400 (La.1978). The Supreme Court said, at page 405:
"Since the operator of a motor vehicle is aware that he could meet many emergencies in which pedestrians will not always act prudently and will sometimes be found in perilous situations, he should have the added burden of keeping the roads safe even for those who are negligently caught off their guard. Further, where injury results, the burden should fall on the motorist who, with the exercise of care reasonable under the circumstances, saw or should have seen the impending peril and had, at that moment, the opportunity to avoid it.
Earlier this court, without expressly saying so, signaled an intention to abolish the contributory negligence defense in pedestrian-motorist cases. Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958). In Belshe, a motorist, who failed to keep a proper lookout and if he had done so would have avoided striking a pedestrian, was held liable. The court indicated that even if it were to find the pedestrian contributorily negligent, defendant would still be held liable.7
What was implicit in Belshe became explicit in the more recent case of Guilbeau v. Liberty Mutual Ins. Co., 338 So.2d 600 (La.1976), where we said:
"Under Louisiana jurisprudence, an operator of a vehicle or heavy equipment who observes, or who should by the exercise of reasonable care have observed, a pedestrian in a position of peril of which the latter is apparently unaware, is responsible for injuries caused when his vehicle strikes the pedestrian in his path, despite any contributory negligence on the part of the latter; providing that, after the duty to make such observation arose, the operator could reasonably have avoided the accident.'
. . . . .
And again, in Pierre v. Landry, 341 So.2d 891 (La.1977), relying on the above quoted language from Guilbeau, this court held liable a motorist who failed to see what he should have seen and struck a pedestrian who was in a position of peril. The court spoke of defendant's `clear chance' without referring to it as his last clear chance, further indicating the court's intention to ignore whether the plaintiff or defendant had the final opportunity to avoid the accident in pedestrian-motorist cases."
*941 Defendants argue, however, that Baumgartner does not apply because that case involved a pedestrian crossing at a crosswalk when struck by defendant driver.
We agree with plaintiff that Baumgartner does not appear to be limited to pedestrians at crosswalks. Defendants herein cite the recent case of Osby v. Harris, 375 So.2d 181 (La.App. 2 Cir. 1979) which states that Baumgartner was inapplicable in that case because Baumgartner is applicable only to pedestrian-crosswalk accidents. As stated above, we do not agree that Baumgartner is strictly limited to crosswalk accidents.[1] In Osby, it was rather clear that the defendant driver was not negligent for the reason that the pedestrian in that case was crossing the street at 1:30 A.M. when he was struck, and that plaintiff was a black man, wearing a dark shirt and dark trousers, thus being very difficult to see.
Finding Baumgartner to be applicable in this case, we do not need to reach a decision as to whether or not Daniel Widcamp was contributorily negligent, inasmuch as that defense is no longer available under Baumgartner. Accordingly, we find that the jury was manifestly erroneous in finding Daniel Widcamp contributorily negligent, and we will reverse.

QUANTUM
Immediately after the accident, Daniel Widcamp was taken by ambulance to the Cal-Cam Hospital emergency room where he was attended by Dr. Roy L. Sasser, Jr. Dr. Sasser found evidence of head trauma with abrasions around the eyes, hematoma or swollen area over the forehead, and swelling in the posterior portion of the skull. The child complained of pains around his upper legs and in the pelvic region. Also, there was some slight swelling in the face. The boy was kept in the hospital from July 19 thru July 21, 1977, and was then released, there being no signs of serious injury. Dr. Sasser saw Widcamp subsequently on July 26 and August 8 of 1977, and again in February of 1978. The February, 1978 visit was not related to the accident.
Daniel Widcamp was next seen by Dr. A. D. Ericsson, a neurosurgeon from Houston, Texas, on September 22, 1977. X-rays which were taken of the Widcamp boy's skull were negative as to fractures. Next, Dr. Ericsson had a Catscanic test performed. This test was likewise negative, showing no subdural hematoma either outside or inside the brain. An electroencephalogram (EEG) was performed and was negative, there being no evidence of seizure activity. A brain scan was performed which showed normal brain function. Routine laboratory tests were also negative.
Daniel Widcamp was also seen by Drs. James Albert Brown, Robert Bobele, William Franklin Foster, Jr., and several others.
There is notable contradiction in the medical and/or psychological evidence. Let it suffice to say, after a full review of the record, and all the medical evidence available to this Court, we are convinced that the amount of $1,800.00 for medical expenses, and $4,000.00 for general damages is justified.
Drs. A. D. Ericsson, Robert Bobele, and James Albert Brown testified by deposition. Dr. Roy L. Sasser, Jr. testified in open court. $100.00 each as expert witness fees will be awarded and taxed as costs.
For the above and foregoing reasons, the judgment of the trial court is reversed, and:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment for the plaintiff and against the defendants, Donald J. Ellender and State Farm Mutual Automobile Insurance Company, in solido, as follows:
(1) In favor of Marvin Kent Widcamp, individually, for $1,800.00 and in favor of Marvin Kent Widcamp, as natural tutor of the minor, Daniel Widcamp, for $4,000.00, with legal interest on both amounts from the date of judicial demand, until paid;
*942 (2) Expert witness fees of Drs. A. D. Ericsson, Robert Bobele, James Albert Brown and Roy L. Sasser, Jr. be fixed at $100.00 each and taxed as costs, and that the defendants pay all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the trial court judgment in favor of the defendant, Allstate Insurance Company, and against the plaintiff rejecting plaintiff's demand be affirmed.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
DOMENGEAUX, J., concurs and assigns reasons.
SWIFT, J., concurs.
DOMENGEAUX, Judge, concurring.
Baumgartner, in its totality, seems to say that contributory negligence is no longer available as a defense to a negligent motorist in a vehicular-pedestrian accident. Appellees herein suggest that Baumgartner is only applicable to vehicular-pedestrian accidents at crosswalks.
Assuming, arguendo, the correctness of appellees' position, I would go on to conclude that the young 8-year old in this case was not contributorily negligent. Ordinarily, under the jurisprudence, an 8-year old is legally (although barely) capable of contributory negligence, but the test to determine the negligence of a youth is not the same as that of an adult.
Considering Daniel's age, intelligence, and experience under the facts of this case, he could not have been expected to react in the same manner as an older and more mature person. The only legal negligence in this case was that of the defendant, Mr. Ellender.
NOTES
[1] See also Hryhorchuk v. Smith, 379 So.2d 281 (La.App. 3 Cir. 1979).