**Virginia Elaine MARCUM,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 78–2248.

United States Court of Appeals,
Fifth Circuit.

July 9, 1980.

John R. Olds, Baton Rouge, La., for plaintiff-appellant.

Mitchell B. Lansden, Asst. U. S. Atty., Baton Rouge, La., for defendant-appellee.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

AINSWORTH, Circuit Judge:

In this wrongful death action Virginia Elaine Marcum sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, alleging that her deceased husband Ronney F. Marcum was killed in an accident caused by the negligence of Oscar Kwiterovich, an employee of the United States Department of Labor, acting within the scope of his employment. The parties consented to a trial before a United States magistrate on stipulated facts, depositions, exhibits, memoranda and proposed findings of fact and conclusions of law. After considering the evidence and hearing arguments, the magistrate dismissed plaintiff's case, finding that defendant's employee Oscar Kwiterovich was not negligent; alternatively, decedent Marcum was contributorily negligent; and alternatively, the Louisiana law doctrine of last clear chance

was not applicable. Judgment was entered in favor of defendant United States pursuant to the magistrate's oral findings, and the judgment was approved by the district judge. We conclude that the trial court was clearly erroneous in its findings, and accordingly reverse.

The accident occurred at approximately 11:15 a. m. on September 7, 1976 at the intersection of Plank and Evangeline Roads in Baton Rouge, Louisiana. Decedent Marcum was employed as a trades helper by the Louisiana Highway Department, which had sent a crew to work in the area. At the time of the accident, the crew was engaged in running an electrical cable north to south down Plank Road, a four-lane street, from a spool located approximately two blocks north of Evangeline, also a four-lane street. The cable, black in color and three-quarters of an inch in diameter, was attached to the bumper of a work truck driven by the supervisor of the crew, Paul Treadway. Although there is some dispute as to the direction in which Treadway's vehicle was facing, there is evidence in the record that Treadway was backing down Plank Road so he could observe the cable operations while driving. Marcum and a co-worker, Warren Hurst, were following the truck on foot.

As the truck reached the intersection, the light was green for traffic on Plank Road, and Treadway instructed Hurst to hold the wire and Marcum to try to prevent traffic from striking the cable as the truck pulled it across the intersection. The cable was elevated approximately 18–20 inches from the road surface as it was pulled through the intersection. Although there was some testimony that the truck had its flashing light on prior to the accident and the crewmembers were wearing yellow hard hats, there were no red flags, orange vests or other safety devices being used by the crew at the time.

Immediately prior to the accident, Kwiterovich was proceeding in a westerly direction in the left-hand lane of Evangeline Street in a 1972 Toyota. A trailer truck was traveling in the same lane ahead of him. When he was approximately 200 yards east of the Plank Road intersection, Kwiterovich first noticed some work taking place in the area of the intersection. He observed the Highway Department truck as it was proceeding through the intersection and saw a man following the truck. He noticed the man looking up and assumed the persons at the intersection were involved in doing some overhead work. At a point approximately 50 to 100 yards east of the intersection, Kwiterovich, who testified in his deposition that he thought the trailer truck ahead of him would turn left, moved into the right lane. The traffic light turned green and he proceeded through the intersection at an estimated speed of 35 miles per hour. He testified that at this time the work truck and pedestrian crewmember had moved to the left and were no longer in his field of vision.

Kwiterovich was looking ahead as he went through the intersection and struck the cable. He did not attempt to brake at first but allowed the car to slow down. The cable became lodged between the front wheels and the body of the Toyota. It came off of the work truck bumper and wrapped around the legs of Marcum, dragging him behind the Toyota approximately 146 feet down Evangeline Street. Marcum's head struck the curb, resulting in his death shortly thereafter at a local hospital. Kwiterovich testified that he never saw the cable and was unaware of it until after the accident.

■ In actions brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674, state law where the alleged negligence occurred is controlling. *Ferrero v. United States*, 603 F.2d 510, 512 (5th Cir. 1979); *Simpson v. United States*, 322 F.2d 688, 690 (5th Cir. 1963). Therefore, Louisiana law governs the substantive issues in this appeal.

■ With regard to our view of the court's factual determinations, the clearly erroneous standard applies. *Alexander v. United States*, 605 F.2d 828, 832 (5th Cir. 1979); *Williams v. United States*, 405 F.2d 234, 239 (5th Cir. 1968); Fed.R.Civ.P. 52(a). However, where the evidence before the

trial court consisted solely of depositions and other written matter, the court hearing no live witnesses, the burden of showing clear error is not so heavy as in the case where the court has the opportunity to assess the credibility of witnesses by personal observation. *Cooper v. Department of the Navy,* 594 F.2d 484, 486 (5th Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979); *Sicula Oceanica, S. A. v. Wilmar Marine Engineering & Sales Corp.,* 413 F.2d 1332, 1333–34 (5th Cir. 1969). *See also Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 n.5 (5th Cir. 1980); *Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431, 434 n.2 (5th Cir. 1979). Thus, where our view of the same evidence from the same vantage point as the trial court leaves us "with a definite and firm conviction that a mistake has been committed," there is clear error and we are bound to set aside the court's findings. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Ferrero, supra,* 603 F.2d at 512.

■ One such erroneous finding was the trial court's determination that there was no negligence on the part of defendant's employee Oscar Kwiterovich. This holding is unsupported by the evidence viewed in light of the applicable law. Louisiana law is clear that for a pedestrian to recover against a motorist there must be fault on the part of the motorist which brings about the injury. *Baumgartner v. State Farm Mutual Automobile Insurance Co.,* 356 So.2d 400, 406 (La.1978). *See Mathews v. Allstate Automobile Insurance Co.,* 370 So.2d 1331, 1333 (La.App.2d Cir.), *writ denied,* 373 So.2d 526 (La.1979); *Fitch v. Evans,* 364 So.2d 1309, 1312 (La.App.2d Cir. 1978), *writ denied,* 367 So.2d 392 (La. 1979). Under Louisiana's "duty/risk" analysis applicable in negligence actions, plaintiff establishes a defendant's liability by showing that defendant's conduct is a cause in fact of the harm, and that conduct is a breach of a legal duty imposed on defendant to protect plaintiff against the particular risk and harm involved. *Boyer v. Johnson,* 360 So.2d 1164, 1166 (La.1978); *Dixie*

*Drive It Yourself System New Orleans Co. v. American Beverage Co.,* 242 La. 471, 487–90, 137 So.2d 298, 302–04 (1962). *See Chavez v. Noble Drilling Corp.,* 567 F.2d 287, 288 (5th Cir. 1978). An act will be deemed a cause in fact of an accident when, viewed in light of all the evidence, it is concluded that it is a necessary antecedent to plaintiff's harm, without which the accident would not have occurred. *Laird v. Travelers Insurance Co.,* 263 La. 199, 209–10, 267 So.2d 714, 717–18 (1972); *Follins v. Barrow,* 354 So.2d 609, 611 (La.App. 1st Cir. 1977), *writ denied,* 356 So.2d 434 (La.1978).

The accident here would not have happened but for Kwiterovich's proceeding through the intersection at Evangeline and Plank Road at an estimated speed of 35 miles per hour, failing to see the cable, which he struck and which in turn entangled Marcum and dragged him to his eventual death. Clearly Kwiterovich's conduct was a substantial factor which had a direct relationship to the accident. *Laird, supra,* 263 La. at 210, 267 So.2d at 718.

■ Our principal inquiry, thus, becomes whether Kwiterovich was under a legal duty to protect decedent Marcum against the particular risk of harm which Marcum encountered and which breach of that duty ultimately led to Marcum's death. Generally, a person's duty toward another can be stated as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. *Straley v. Calongne Drayage & Storage, Inc.,* 346 So.2d 171, 176 (La.1977). Louisiana law provides that a motorist is under a duty at all times to keep a sharp lookout ahead to discover the presence of those who might be in danger. *Baumgartner, supra,* 356 So.2d at 404; *Jackson v. Cook,* 189 La. 860, 868, 181 So. 195, 197 (La.1938). A motorist is not entitled to assume his pathway is clear. *Weber v. Phoenix Assurance Co. of New York,* 273 So.2d 30, 33 (La.1973). Rather, he is charged with the duty of seeing that which may be observed in the exercise of reasonable care. *Jackson, supra,* 189 La. at 868, 181 So. at 197; *Follins, supra,* 354 So.2d

at 611; *Welch v. Mayhall,* 325 So.2d 741, 744 (La.App. 1st Cir. 1976). The failure to heed this duty constitutes negligence and such failure imposes liability on motorists for injuries they inflict upon pedestrians in positions of peril upon the roadway. *Baumgartner, supra,* 356 So.2d at 404; *Guilbeau v. Liberty Mutual Insurance Co.,* 338 So.2d 600, 604 (La.1976); *Jackson, supra,* 189 La. at 868, 181 So. at 197.

In view of these well-established principles, the facts lead to the definite conclusion that Kwiterovich was negligent in striking the cable and causing the accident which led to Marcum's death. The photographs in evidence indicate that the cable was clearly visible against the background of the concrete road surface. At the time of the accident, approximately 11:15 a. m., the weather was clear and the road surface dry. The cable was suspended approximately 18 inches above the road well before Kwiterovich entered the intersection and at the time of impact. Furthermore, Kwiterovich testified in his deposition that he was aware that there was some type of work in progress when he was approximately 200 yards from the intersection. He had observed the work truck and one of the pedestrian crewmembers. Nonetheless, he proceeded through the intersection at a self-estimated speed of 35 miles per hour. Although there had been a trailer truck traveling in the lane ahead of him as he was approaching the intersection, Kwiterovich switched lanes approximately 50–100 yards before entering the intersection and the view in his lane was unobstructed prior to and at the time of impact.

Kwiterovich testified that he was looking ahead as he proceeded through the intersection and he did not see the cable at any time before the accident.

A motorist who looks and does not see what may be seen by the exercise of reasonable care is negligent to the same extent as one who does not look at all. *Follins, supra,* 354 So.2d at 611; *Welch, supra,* 325 So.2d at 744. Although he is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the road, *Vowell v. Manufacturers Casualty Insurance Co.,* 229 La. 798, 808–09, 86 So.2d 909, 913 (1956); *Parker v. Continental Insurance Co.,* 341 So.2d 593, 594 (La.App.2d Cir. 1977), the circumstances here served to alert Kwiterovich to the particular risk involved and to impose upon him the duty to exercise due care to alter his conduct accordingly.[1] As stated earlier, Kwiterovich admitted that he had observed some work in progress at the intersection as he was approaching it. Though he testified that he reduced his speed at this point, he continued through the intersection, failing to apply his brakes even after striking the cable. Although alerted to the possibility of danger by the activities at the intersection, he failed to bring his automobile under such control as to have stopped if something were in the road. *See Hryhorchuk v. Smith,* 379 So.2d 281, 288–89 (La.App.3d Cir. 1979). We thus find Kwiterovich was under a legal duty to protect Marcum against the particular risk of harm involved and that his conduct constituted a breach of that duty.

1. In *Page v. Green,* 306 So.2d 847 (La.App.2d Cir. 1975), the Louisiana Court of Appeal held that a motorist was not under a legal duty to protect against striking a winch cable stretched across a rural highway which he did not see and which he had no reason to anticipate. In that case, however, the cable was not placed at an intersection or other point where a motorist is under a duty to guard against the possibility of peril, there were inclement weather conditions which rendered the cable barely visible and the private citizen placing the cable on the road had given no warning other than to wave his hands immediately prior to the motorist's approach while he was standing some distance behind the cable. Furthermore, no pedestrian was injured. Rather, it was the motorist who was injured as a result of striking the cable, and the court refused to find him contributorily negligent. *See also Armstead v. Central Louisiana Electric Co., Inc.,* 308 So.2d 870 (La. App.3d Cir. 1975) (plaintiff who struck a three-eighths inch guy wire on rural highway at night where weather was hazy with patches of fog and wire had not been there on previous evening when he had traveled over same road), *writ refused sub nom. LeNormand v. Hardware Mutuals Casualty Co.,* 246 La. 586, 165 So.2d 482 (1964).

■ In addressing the trial court's finding that decedent Marcum was contributorily negligent, we note that *Baumgartner, supra,* 356 So.2d at 405, made clear that contributory negligence is no longer a defense to a pedestrian's claim for damages sustained as a result of the negligence of a motorist. *Widcamp v. State Farm Mutual Automobile Insurance Co.,* 381 So.2d 937, 940–41 (La.App.3d Cir. 1980); *Hryhorchuk, supra,* 379 So.2d at 289. *See* 53 Tul.L.Rev. 296, 296–304 (1978). In reaching its conclusion, however, the trial court determined that *Baumgartner* was not applicable to the facts of this case, because decedent Marcum was not the type of pedestrian contemplated by the court in *Baumgartner,* since he was working in the intersection rather than merely trying to cross it; also, there was no direct contact between the motorist's vehicle and the pedestrian as in *Baumgartner*; and, finally, that the accident did not occur within a clearly defined pedestrian crosswalk, an important factor in *Baumgartner.*[2] Although the court's distinctions are valid ones, we find that its holding is contrary to the rationale of *Baumgartner,* and that the rule in that case clearly operates to bar the defense of contributory negligence here.

In *Baumgartner,* the Louisiana Supreme Court held that when a motorist approaches a pedestrian crosswalk he must use more than ordinary care to see what is ahead and be prepared for the possibility of people crossing. Since the motorist, rather than the pedestrian, bears the greater burden of caution, a driver is required to discover a pedestrian's peril sufficiently early to take evasive action, and his failure to do so constitutes fault despite a clear finding of negligence on the part of the pedestrian. 356 So.2d at 404–06. The foundation of the court's holding is that a mutuality of risks is lacking between the pedestrian and the

motorist, the latter clearly having the advantage. 356 So.2d at 405.

■ We find that same mutuality of risks lacking in the circumstances of this case despite the fact that Marcum was working as a crewmember for the Louisiana Department of Highways at the time of the accident. Prior to being struck Marcum had been crossing the intersection on foot, and although doing so in the course of his work, he was a pedestrian nonetheless and clearly in a position of peril. Relative to the oncoming vehicle, he was no less vulnerable than a pedestrian casually crossing the street; he was unquestionably the "less armored member of society" for which Kwiterovich as a motorist on a public roadway was under a duty at all times to keep a vigilant lookout and avoid. *Welch, supra,* 325 So.2d at 744. *See Guilbeau, supra,* 338 So.2d at 603; *Jackson, supra,* 189 La. at 868, 181 So. at 197. Thus, despite the possibility that the Department of Highways may have been negligent in failing to use adequate cautionary signals or other safety devices in the course of their work to warn the motoring public, this factor does not bar defendant's liability in this case.[3]

The trial court's second distinction, that the vehicle did not directly strike the pedestrian as in *Baumgartner,* but rather Kwiterovich's car struck the cable which in turn struck Marcum, is clear error. If Kwiterovich had discharged his duty while approaching the intersection to keep a sharp lookout for those in danger, he would have observed the cable which was clearly visible and avoided the impending peril. Further, to draw the distinction here would dilute an important policy underlying *Baumgartner,* to stress the importance of human safety "even for those who are negligently caught

---

**2.** The court also found that *Baumgartner* was not applicable because the motorist in this case (Kwiterovich) was held not to be negligent. But since we have determined that Kwiterovich was in fact negligent, the court's holding is erroneous.

**3.** It appears that Marcum, only a trades helper, was hardly in a position to be responsible for insuring that the crew employed the proper

cautionary measure. Furthermore, there was testimony that the work truck's flashing light was on and that Marcum and the other crewmembers were wearing yellow Highway Department hats at the time of the accident which would serve to provide notice to an approaching motorist that work was in progress creating a potentially hazardous condition.

off their guard." *Baumgartner, supra*, 356 So.2d at 405. Thus, under these circumstances, the fact that Kwiterovich struck the cable instead of Marcum is immaterial.

Finally, the trial court's holding that *Baumgartner* is inapplicable because there was no clearly defined pedestrian crosswalk at the intersection where the accident occurred is erroneous. Although it is true that in *Baumgartner*, the pedestrian was struck while in a crosswalk, the rationale of that case is equally applicable to the circumstances here. Plank Road had no marked crosswalk; however, Marcum was struck while in an area where pedestrians would likely cross the street. In such a case, Marcum would clearly have the benefit of a motorist's obligation to exercise the degree of care necessitated by the circumstances. To hold that *Baumgartner* is limited to pedestrian-crosswalk accidents would lead to an anomalous distinction which the court plainly did not intend to draw. *See Widcamp, supra*, 381 So.2d at 940–41; *Hryhorchuk, supra*, 379 So.2d at 289.

In determining that Kwiterovich was negligent and that the defense of contributory negligence was not available to defendant in this case, we find it unnecessary to address the trial court's holding that the doctrine of last clear chance was not applicable.

Liability having thus been established by our decision herein, the case must be remanded to the trial court for a determination of plaintiff's damages.

REVERSED AND REMANDED.