455 So.2d 678 (1984)
Jerry McKENZIE, Individually and For the Use and Benefit of the Minor, Gregory McKenzie
v.
NEW ORLEANS PUBLIC SERVICE, INC. and Herman R. Dear.
No. CA-1688.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1984.
Dissenting Opinion July 27, 1984.
Rehearing Denied September 27, 1984.
Writ Denied November 26, 1984.
Robert T. Hughes, New Orleans, for plaintiffs-appellants.
Charlton B. Ogden, II, New Orleans, for defendant-appellee.
Before REDMANN, C.J., and GARRISON and BARRY, JJ.
BARRY, Judge.
Plaintiff appeals the dismissal of his minor son's lawsuit for damages as a result of being hit by defendant's bus.[1]
Gregory McKenzie and his friend, Alex Bell, then 13 and 14 years old, were going to cross the Industrial Canal bridge in New Orleans at about 8:00 a.m.. After waiting 15 minutes for the drawbridge to close, the boys continued on the pedestrian walkway which is adjacent to the roadway and protected by a steel mesh fence.
About midway down the walkway Gregory noticed a man with a large dog on the far side of the bridge. When the boys were a few feet past the protected walkway the dog ran toward them. Frightened, Gregory ran into the roadway and collided with the front door of the NOPSI bus which had just crossed the bridge.
The bus driver, Herman Dear, testified he did not see Gregory until after the impact. He heard a slight "crunching" sound against the side of the bus and a passenger screamed. Dear alighted from the bus and found the youngster lying under the bus about two feet from the curb.
Dear testified he did not notice the youths, either while waiting for the drawbridge to close or while crossing the bridge. He was watching traffic on the *679 narrow bridge, particularly the car ahead which had just stalled. Dear had an unobstructed view of the pedestrian walkway, but was not concentrating on that area because it was fenced off from the roadway. He explained he was looking ahead and driving 5-7 m.p.h. or less when he reached the end of the bridge. Dear surmised Gregory must have "come from the rear" and run into the front side of the bus because he would have seen the boy if he'd stepped in front of the bus.
Dear testified he saw the bridge attendant on the sidewalk, but not his dog. He said after the accident several bus passengers told him they had seen the attendant feeding the dog from the side windows. The driver opined that, from his viewpoint, the man's body hid the dog from view.
Joseph Stephany, a NOPSI supervisor who investigated the scene, testified there were marks on the bus door which indicated Gregory hit that area. Photographs showed where Gregory's arm slid along the dusty glass in the door.
Plaintiff argues that Dear was negligent by failing to anticipate and avoid the accident. He stresses the heavy burden on the driver of a motor vehicle to watch out for the safety of pedestrians, especially children, and relies on Baumgartner v. State Farm Mutual Insurance Co., 356 So.2d 400, 404 (La.1978):
... the first duty of those operating motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Rottman v. Beverly, 183 La. at 955, 165 So. at 156. "... [W]hat they can see they must see and in legal contemplation they do see;... their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."
Plaintiff claims Dear would have seen the boys before the accident if he had exercised due diligence. Plaintiff points out that, under Baumgartner, Dear is legally responsible for seeing what he could have seen and that once a driver sees children on or near the side of a road, he should anticipate the child may place himself in a position of peril. Dufrene v. Dixie Auto Insurance Co., 373 So.2d 162 (La.1979); Widcamp v. State Farm Mutual Auto Insurance Co., 381 So.2d 937 (La.App. 3rd Cir. 1980). Thus, plaintiff submits Dear was culpably inattentive by failing to see the boys on the walkway.
As NOPSI points out, however, a driver is liable only when there is an opportunity to appreciate the pedestrian's peril in time to avoid the accident. Shank v. Government Employees Insurance Co., 390 So.2d 903 (La.App. 3rd Cir.1980); Baumgartner at p. 405.
Baumgartner does not impose strict liability upon every motorist who hits a pedestrian, but rather mandates that "the motorist must be found guilty of negligence in order for him to be held responsible."
In this case the trial court reasoned:
The cause of plaintiff's running into the roadway of St. Claude Avenue was his fear of harm from the dog.
The bus driver's testimony was that he never saw Gregory McKenzie until after he got outside of the bus. If McKenzie had moved into the path of the bus from the front he would have seen McKenzie before the contact between the bus and McKenzie's body.
The Court finds that the bus driver was guilty of no negligence which was the cause of the accident or of plaintiff's injuries.
This case is similar to Osby v. Harris, 375 So.2d 181 (La.App. 2nd Cir.1979), where an adult pedestrian was struck while attempting to cross a highway from an adjacent median. The pedestrian started crossing when the defendant's approaching car was almost even with him. In affirming for the defendant the court stated at pp. 181:
The trial court's finding that Harris could not have avoided the accident recognized that even had Harris observed decedent at the time decedent placed himself in peril by attempting to cross *680 Youree, Harris was so close to decedent when the peril was created, that it would have been impossible for him to avoid the accident.
Similarly, this Court held that a driver traveling at 12-15 m.p.h. was not negligent in striking a 9-year old bicyclist who darted out from between two parked cars into the path of the oncoming car. Martinez v. Landry, 399 So.2d 629 (La.App. 4th Cir. 1981).
Plaintiff cites four factual situations which involved pedestrians who were in a position of peril as the motorist approached. In Baumgartner, supra, the pedestrian was in the roadway and was seen by the motorist well before the accident occurred. In Buckley v. Exxon Corporation, 390 So.2d 512 (La.1980), two children were bicycling in the parking lane in the roadway ahead of a truck. The truck driver angled off the road and into the parking lane, injuring the children near the curb of the roadway. In Widcamp v. State Farm Mutual Automobile Insurance Company, 381 So.2d 937 (1980), the young pedestrian attempted to cross the road and stopped in the roadway ahead of the motor vehicle. The motorist, who was exceeding the speed limit, struck the child after leaving some 72 feet of skid marks. In Young v. Wayde, 383 So.2d 1283 (La.App. 1st Cir.1980), the pedestrian, some distance ahead of the motorist, attempted to cross the roadway. She became afraid when she saw an automobile approaching and attempted to return to the shoulder of the road, from whence she came, when the accident occurred.
In this case the bus driver had no opportunity to avoid the accident. Even if the driver had seen the boys on the walkway, Gregory's sudden run was into the side of the busnot the front. This unfortunate accident would have happened if the bus had been stopped.
Motorists are not insurers of pedestrians' safety. Where a pedestrian is negligent and the motorist is not, there is no recovery. Parker v. Continental Insurance Co., 341 So.2d 593 (La.App. 2nd Cir. 1977).
The judgment is affirmed.
AFFIRMED.
GARRISON, Judge, dissents with written reasons.
In Baumgartner v. State Farm Mutual Insurance Company, 356 So.2d 400 (La. 1978), the Supreme Court stated:
"The first duty of those operating motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. What they can see they must see and in legal contemplation they do see; their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."
If the first duty of a driver is to see what he should see in ordinary circumstances, then how much greater is the duty to see the unique, the extraordinary, the unusual, the bizarre?
Consider the case of the barking dog on the drawbridge.
The credibility of the bus driver is so suspect that it is difficult to believe that he did not see Gregory. To believe the bus driver is to accept the principle that the man wore horseblinders as he drove the bus. Traffic had been stopped for some time to allow for the passage of several boats. During the approximately 15 minute wait, according to his testimony, the driver saw the bridge attendant, but failed to see his dog or the two boys. Even if the driver did not see them, it is obvious that he should have.
What is particularly tragic in the instant case is that clear cut negligence does exist on the part of the bridge attendant as well as the bus driver. Gregory was attacked by his dog and in attempting to avoid that attack ran into the side of the bus. What was the bridge attendant doing with an unleashed dog on a bridge?! Unfortunately, however, neither the bridge attendant, nor his employer, nor the bridge owner were made party-defendants to this suit. *681 That unfortunate fact, however, does not relieve the bus driver of his duty to see that which he should have seen.
Gregory McKenzie is blind in one eye with permanent impairment in the other eye as well. In addition, he suffers permanent damage in the left foot such that he has difficulty walking, is required to wear a different shoe size, and limps. Lastly, he is now subject to convulsive seizures, having suffered twelve in the year and a half since the accident, and is and will be required to take anti-convulsive medication for the rest of his life.
I would award damages to the plaintiffs on the grounds that the driver had an even greater duty to see the bizarre and the unusual: the barking dog on the drawbridge.
NOTES
[1] The matter was first tried in the federal district court which rendered a directed verdict in favor of NOPSI; however, the federal court of appeals found there was no subject matter jurisdiction.