MURPHY, J.
| ¡¡Plaintiff/Appellant, Kim White, appeals the trial court’s judgment following trial which found no liability on the part of defendants for her injuries and dismissed the case with prejudice. We affirm the judgment of the trial court,
FACTS AND PROCEDURAL HISTORY
At trial, Kim White testified that on January 12, 2011, she was in front of a convenience store located on the West Bank of Jefferson Parish, when she was approached by a man she “knew from around the neighborhood” who asked if she could help him to purchase heroin. White got into the passenger seat of the car that the man was driving and the two went in search of drugs. Soon thereafter, White and the driver noticed that a police car with its lights on was behind them, at which time the driver “took off.”[1] White *207 testified that she told the driver to stop the car so that she could get out. After a high speed chase with the police vehicle, the driver of the car went into a parking lot and “stopped.” White said that after the car stopped, the driver ran away and she exited the car with her hands up to show police that she was not trying to run. White stated that she was attempting to get to the back of the car so that police could see her when the police vehicle drove up quickly and made contact with her. As a result, White sustained multiple injuries, which she described in her testimony, and also incurred medical expenses. She was later charged with resisting arrest by flight and possession of drug paraphernalia.
On cross-examination, White testified that she only saw one police car during the pursuit, and that the police car’s overhead lights and siren were both activated. White testified that she had her hands up at the time of the accident, which conflicted with her prior deposition testimony. White’s medical records showed that she had marijuana in her system on the date of the accident, but .she |4did not believe that the drugs interfered with her memory of the events surrounding the accident. White also testified that she was a heroin user, and had used heroin on January 12, 2011, at approximately 9:80 or 10:00 a.m.
Deputy Paul Gegenheimer testified that he was involved in a car chase on January 12, 2011. At the end of the pursuit, Deputy Gegenheimer tried to maneuver his own vehicle to “box” the other car in, but the other car stopped abruptly and he was unable to avoid a collision. He ran into White, who was “very close” to the side of the stolen vehicle and appeared to be running away. Deputy Gegenheimer did not know if he hit White before he hit the stolen vehicle, and he was going five to 10 miles per hour at the time of the impact. It was not his intent to run into White. Deputy Gegenheimer stated that, at the time of the accident, he was not disobeying any traffic laws, speed limits or other “regulations.”
On cross-examination, Deputy Gegen-heimer testified that he activated his emergency lights and siren after receiving the radio call about a stolen vehicle. After Deputy Johnnie Petit, Jr., who .was the first officer in pursuit, said on the radio that the stolen car had .refused to stop, Deputy- Gegenheimer headed to Deputy Pettit’s location to join in the pursuit. During the chase, both Deputy Gegenheimer and Deputy Petit drove above the posted speed limit. Eventually, the stolen car exited the roadway and went into the parking lot of an apartment complex. It was there that Deputy Petit got in front of the stolen car. At that time, Deputy Gegenheimer’s intention was to block the car in by pulling behind it. Immediately after the stolen vehicle stopped, he saw White begin to flee toward the rear of the car. Deputy Gegen-heimer did not see White’s hands in the air.
Because this was an emergency call, Deputy Gegenheimer and Deputy Petit had their lights and sirens activated. After White was hit, Deputy Gegenheimer placed her in handcuffs, advised her of her rights and contacted EMS. A search of the stolen vehicle yielded drug paraphernalia with heroin - residue. White was |5arrested for resisting arrest and possession of drug paraphernalia, as well as for having nine outstanding warrants.
Deputy Petit, Jr.’s testimony was consistent with that of Deputy Gegenheimer with respect to the pursuit of the stolen vehicle. He also stated that when the sto *208 len vehicle finally did stop, it was a “sudden, abrupt stop.” Deputy Petit did not see Deputy Gegenheimer’s vehicle strike White.
Deputy Mike Tisdale conducted the investigation of the accident that forms the basis of the lawsuit. Deputy Tisdale arrived on the scene approximately two minutes after the crash occurred. White was on the ground when he arrived, and she was not in handcuffs, but she was in so much pain that he could not communicate with her. Deputy Tisdale then spoke with Deputy Gegenheimer to find out how the crash occurred. Deputy Gegenheimer described the car chase and told Deputy Tisdale that as he' was pulling into the parking lot, White “got out of the vehicle and ran to the rear of her vehicle” as if she was trying to flee from the scene. Deputy Tisdale testified that what he saw was consistent with Deputy Gegenheimer’s account of the accident, including the slow speed at which it took place. There.was minor damage to the stolen vehicle’s right rear quarter panel and only “paint transfer” on the police vehicle’s front passenger side bumper. Deputy Tisdale’s report did not find any driving violations on the part of Deputy Gegenheimer.
Major Kerry Najolia, director of training for the- Jefferson Parish Sheriffs Office (“JPSO”), was accepted, by stipulation of the parties, as an expert in the field of “police. operations, procedure and training as -it relates to emergency -response traveling, which includes pursuits.”. As an instructor at the JPSO training academy, one of his duties was to “instruct drivers training for emergency response .and also defensive training for non-emergency response.” As director of training, Major Na-jolia was responsible for reviewing and implementing JPSO policy and | ¿procedures pertaining to La. R.S. 32:24, which covers .“emergency driving” and “pursuit driving” for JPSO officers. As part of the training for JPSO deputies, they have classroom instruction and spend time on a driving track over three eight-hour days. Major Najolia testified that, in his opinion, Deputies Petit and Gegen-heimer followed all policies for responding to an emergency call, and were therefore immune from liability for accidents under La. R.S. 32:24 during the pursuit of the stolen vehicle. Major Najolia found that Deputy Petit’s actions in the chase conformed to the- JPSO training, as did Deputy Gegenheimer’s action of trying to block in the stolen vehicle to prevent its escape. Major Najolia concluded that Deputy Ger genheimer simply did not have the time to stop his vehicle based on the sudden stop of the pursued vehicle, and that none of Deputy Gegenheimer’s actions amounted to reckless disregard for the safety of others or gross negligence. Major Najolia disagreed with the deposition testimony introduced into evidence of former Slidell police officer Gary Dresselhaus, who opined that La. R.S. 32:24 applied during the chase of the stolen vehicle, but not at the moment of impact in the parking lot and that ordinary negligence was the standard at that time. Major Najolia testified that he was not aware of a single police department in Louisiana, including Slidell, that had a policy consistent with Dresselhaus’ ■ opinion that La. R.S. 32:24. could be applied on and off during an emergency, such as in the instant case.
In its August 8, 2016 Judgment, the trial court found in favor of defendant and dismissed White’s claims with prejudice.
On appeal, White contends that the trial court erred in finding that La. R.S. 32:24(B) applied in this case, thus requiring her to prove gross negligence instead of ordinary negligence. In the alternative, White argues that Deputy Gegenheimer’s .actions constituted gross negligence.
*209 JjLAW AND ANALYSIS
La. R.S. 32:24, the emergency vehicle exception to the Louisiana highway regulatory act, provides:
A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver or rider of an authorized emergency vehicle may do any of the following:
(1) Park or stand, irrespective of the provisions of this Chapter.
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation. ,
(3) Exceed the maximum speed limits so long as he does not endanger life or property.
(4) Disregard regulations governing the direction of movement or turning in specified directions. '
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider’s whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle,
D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.
In the instant case, in its Reasons For Judgment, the trial court found that La. R.S. 32:24 applied during the entire chase, including the apprehension in the parking lot, because • Deputies Petit and Gegen-heimer were engaged in the lawful pursuit of‘a subject while utilizing their overhead emergency lights and sirens. The trial court opined that, in order for White to recover, she would have to demonstrate that Deputy Gegenheimer acted- with “reckless disregard” for her safety. The trial court concluded that White failed to meet her burden of proof that | ^Deputy Gegenheimer’s actions rose .to the level of reckless disregard, and also that White’s testimony was not credible. Specifically, the court stated:
The Court- does not find plaintiffs testimony credible as to her actions prior to the collision. Plaintiff testified that when •she exited the vehicle, she ran with her hands up in the air to signify her surrender to the police. She also admitted to pleading guilty to resisting arrest—an admission that she was not intending to surrender. Secondly, she testified she did not see Deputy Gegenheimer’s vehicle, so- she could not have been intending to surrender to him. The only logical person for plaintiff to surrender to, was Deputy Petit who was in front of the suspect vehicle, and whom she admitted seeing. It is clear that plaintiff was not attempting to surrender when she exited the vehicle. Deputy Gegenheimer testified that as he was pulling behind the suspect vehicle, it suddenly came to a stop and both the driver and plaintiff exited the vehicle. Deputy Gegenheimer attempted, to apply his brakes and maneuvered his vehicle in order to avoid hitting both the plaintiff and the vehicle, but was unable to do so. The Court is not persuaded that Deputy Gegenheimer *210 acted in a reckless disregard for plaintiffs safety. In fact, had plaintiff surrendered to the deputies as she claimed she was doing, she would not have been in a place of danger. But for plaintiffs negligence of attempting to evade the police by running between the suspect vehicle and Deputy Gegenheimer’s vehicle, plaintiff would not have sustained the injuries she claims.
Under the manifest error standard of review, a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). There is a two-part test for the reversal of a factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). Thus, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Bellard v. American Central Ins. Co., 07-1335 (La. 4/18/08), 980 So.2d 654, 672.Where the factfinder’s determination is based on | fits decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. Id. See also McGlothlin v. Christus St. Patrick Hospital, 10-2775 (La. 7/1/11), 65 So.3d 1218, 1231-32.
On appeal, White asserts that the trial court erred in finding that the “reckless disregard” standard of La. R.S. 32:24 applied, instead of an ordinary standard of negligence. In Puearry v. State, 496 So.2d 1372 (La. App. 3 Cir. 1986), the Louisiana Third Circuit Court of Appeal considered a similar issue to the one presented in the instant appeal regarding the standard of negligence to be used when a police officer is responding to an emergency. In that case, plaintiff, who was intoxicated, overturned his truck then walked to a nearby store to call for assistance. A state trooper, a deputy sheriff and an ambulance all responded to the call. Before the three emergency vehicles arrived at the scene, the state trooper was notified by radio that it was not an emergency, and he reduced his speed to within the speed limit. As the three emergency vehicles approached the accident site, plaintiff started running along the shoulder of the road, in the same direction as the emergency vehicles. When the sheriffs automobile had passed, the plaintiff suddenly darted left without warning into the highway in front of the state trooper’s car, which had its emergency lights on. The trooper immediately applied his brakes, but was unable to avoid hitting the plaintiff before he came to a stop. After a trial on the merits, the trial court found that the trooper had committed no negligent acts causing plaintiff’s injuries.
In affirming the trial court’s ruling that dismissed plaintiff’s case, the Third Circuit applied two separate standards of negligence. The court first applied the “reckless disregard” standard in La. R.S. 32:24, and found that the trooper was responding to an emergency call and “was in the process of slowing down as he [ 10approached the accident site” when “[without warning, plaintiff suddenly darted onto the highway” in front of the trooper’s vehicle. “The *211 trooper slammed on his brakes but was unable to avoid hitting the plaintiff. Eyewitnesses testified that the accident was unavoidable.” The Third Circuit then applied an ordinary negligence standard to the facts of the case, and again found that the trooper had no liability, even if he were considered to be a motorist in an accident with a pedestrian. The court reasoned:
The driver of an emergency vehicle will only be held liable for negligence to the degree that it constitutes reckless disregard for the safety of others. Mott v. Babin Motors, Inc., 451 So.2d 632 (La. App. 3 Cir. 1984). The jurisprudence is well established that when a motorist observes an adult pedestrian apparently in full possession of his faculties, in a position of safety, he has the right to assume that the pedestrian will remain in this position of safety and will not precede into the path of an oncoming vehicle. Gauthreaux v. Edrington, 220 So.2d 138 (La. App. 1 Cir. 1969); Edwards v. Insurance Company of North America, 207 So.2d 222 (La. App. 4 Cir. 1968), writ den., 252 La. 119, 209 So.2d 43 (La. 1968); Sorrell v. Allstate Insurance Company, 179 So.2d 499 (La. App. 3 Cir. 1965), writ ref'd, 248 La. 698, 181 So.2d 398 (1966).
[[Image here]]
For a pedestrian to recover against a motorist, he must prove negligence on the part of the driver by a preponderance of the evidence.
[[Image here]]
In this case, Trooper McKenzie did all he could to avoid hitting the plaintiff. Plaintiff testified that before he attempted to cross the highway, he looked and saw the ambulance approaching. Trooper McKenzie had the right to assume that the plaintiff, who was in a position of safety on the shoulder, would not dart across the highway. Gauthreaux v. Edrington, supra.
“Motorists are not insurers of pedestrians’ safety. Where a pedestrian is negligent and the motorist is not, there is no recovery.” McKenzie v. New Orleans Public Service, 455 So.2d 678, at page 680 (La. App. 4 Cir. 1984), writ den., 460 So.2d 1043 (La. 1984).
We do not find that the trial court was manifestly in error or clearly wrong in finding no negligence on the part of Trooper McKenzie. We also find from the record that the trooper did all that he could do to avoid hitting the plaintiff under the circumstances.
Id. at 1373-74.
Inin the instant case, plaintiff, who had used heroin and marijuana hours before, was a passenger in a stolen car that led police on a chase through Jefferson Parish, an event classified by the Jefferson Parish Sheriffs Office as an emergency call. It was not contested that, prior to the time that the stolen car came to a stop, La. R.S. 32:24 provided Deputies Gegenheimer and Petit with immunity during the pursuit of the stolen vehicle. While the deputies were in the process of trying to end the chase and box the stolen vehicle in, White, without being directed to do so, ran from the vehicle after it had been stopped and directly into the path of Deputy Gegenheimer’s oncoming police car. White testified that she ran to the back of the stolen vehicle to surrender; conversely, Deputy Gegenheimer testified that White appeared to be fleeing from the vehicle, as the driver had done. Under either version of the facts, there is nothing in the record to suggest that Deputy Gegenheimer had any basis to expect that White would be in in his path of travel. Deputy Tisdale testified that his investigation of the accident supported Deputy Gegenheimer’s account. *212 The trial court heard the testimony of an expert, Major Najolia, that Deputy Gegen-heimer’s actions during the chase were consistent with his training. While White submitted portions of the January 14, 2016 deposition of H. Lee Dresselhaus into evidence to attempt to establish negligence on the part of Deputy Gegenheimer, Major Najolia testified that he had personally verified with Mr. Dresshaus’ former employer, the Slidell Police Department, that it was not their policy to apply La. R.S. 32:24 in the manner that Mr. Dresshaus had suggested in his deposition. The trial court apparently gave more weight to Major Najolia’s expert testimony, a decision which is within its broad discretion. Pendleton v. Barrett, 97-570 (La.App. 3 Cir. 12/23/97), 706 So.2d 498.
We find no manifest error in the trial court’s determination that Deputy Ge-genheimer’s actions immediately preceding and including the accident with plaintiff were not the result of gross negligence or of a reckless disregard for | ^plaintiffs safety, the standard set forth in La. R.S. 32:24. Thus, the immunity of'the statute relieves him of responsibility.[2]
In finding no negligence on the part of defendants for the reasons stated above, we affirm the trial court’s judgment that dismissed plaintiffs claims with prejudice!
AFFIRMED

. According to White’s Petition For Damages, the approximate time of the chase was 3:45 p.m.

. However, even taking the additional step of applying the ordinary negligence standard, as the court did in Pueatry, supra, we still con- ' elude that Deputy Gegenheimer was not at fault for the accident. It was the decision of plaintiff to leave a position of safety in the passenger seat of the stolen vehicle, and place herself in the immediate path of Deputy Ge-genheimer’s car, which was still in pursuit, that caused the accident. The evidence presented showed that Deputy Gegenheimer was driving at a minimum speed and did all he could to avoid the accident with White. Although not a part of the judgment itself, we specifically find no merit in the trial court's suggestion in its Reasons For Judgment that the striking of the vehicle by Deputy Gegen-heimer "may constitute some negligence for failure to estimate the distance between the vehicles," Simply put, Deputy Gegenheimer was not negligent and was doing his job as he was trained to do.